A. E. Cooper *etc.* *v.* Belva Mullenax *et al.*

(CC 669)

Submitted September 22, 1943. Decided November 16, 1943.

Kenna and Rose, Judges, dissenting.

*A. E. Cooper*, for plaintiff.
*P. T. Ward* and *Joseph Madden*, for defendants.

Lovins, Judge:

The Circuit Court of Pocahontas County sustained a demurrer to the bill of complaint in a judgment lien creditors' suit, and, on its own motion, certified its ruling to this Court.

A. E. Cooper recovered two judgments, one against Ona J. Mullenax, Bessie Mullenax, Belva Mullenax, and Olet Mullenax for $105.50 and costs, and one against Ona J. Mullenax, Olet Mullenax and Belva Mullenax for $95.05 and costs. The judgments were rendered May 26, 1942, by a justice of the peace of Pocahontas County, who, on the following day, issued executions on the judgments directed as follows: "To Ward Hudson, Sheriff, or any Constable of Edray District in said County * * *". The executions were delivered to the Sheriff of Pocahontas County, who made returns thereon reading as follows: "Execution returned no property found". One return was dated June 5, 1942, the other bears no date. Both were signed "Ward Hudson, Sheriff of Pocahontas Co. W. Va." After the executions were returned, plaintiff filed his bill of complaint, in which he alleged the rendition of the judgments, the issuance and return of the executions as hereinabove mentioned, and other facts unnecessary to note, exhibiting with the bill certified copies of the executions and returns.

Ona Mullenax, Olet Mullenax and Belva Mullenax demurred to the bill of complaint, and assigned as grounds therefor that the execution issued on the judgment for $95.05 and costs was directed to the Sheriff or any Constable, as hereinabove indicated; that no memorandum was made by the justice of the peace showing any reason for so directing the execution; that the justice exceeded his power in directing the same to the sheriff or any constable; and that the execution by reason thereof is void.

Defendants, Virgil Mullenax and Noel Mullenax, demurred to the bill of complaint on the ground that the two executions were directed and delivered as hereinabove stated; and that the justice made no memoranda on his docket disclosing that it was "unfit" to deliver the said executions to a constable.

The Court sustained the demurrer first mentioned, and, of its own motion, certified the following questions to this Court: (1) Are the executions and returns thereon void because they were directed to the sheriff or any constable; and (2) Whether the executions may be amended by the justice of the peace to show that said executions were intended to be directed solely to the sheriff because it was "unfit" to direct them, or either of them, to a constable; and after said amendments to the executions are made whether the bill of complaint in this suit may be amended to conform thereto?

No ruling was made on the demurrer of Virgil Mullenax and Noel Mullenax. The questions certified included both executions, whereas the demurrer on which the trial court ruled challenged only one execution. Nevertheless, the questions as to one execution are determinative of the defects, if any, existing in the other, the papers being identical except as to date.

The issuance of an execution and the return thereon showing no property found are jurisdictional prerequisites to the prosecution and determination of a suit to enforce a lien on land. Code, 38-3-9; *Lewis* v. *Fisher,* 114 W. Va. 151, 171 S. E. 106. But where no execution has issued within two years of the date of the judgment showing a *bona fide* effort to exhaust the judgment creditor's legal remedy, that jurisdictional requirement is satisfied. Code, 38-3-9; *Guaranty Co.* v. *Eary,* 116 W. Va. 477, 181 S. E. 817. It is the manifest purpose of the statute above mentioned that judgment creditors shall be required to exhaust the legal remedy afforded them before the land of a judgment debtor may be sold. An execution directed to the proper officer of the county of the judgment's debtor's

residence and returned "no property found" effectuates that purpose. An execution directed to a special constable appointed by a justice of the peace and returned "no property found" is void and does not meet the jurisdictional requirement above mentioned. *Stutler* v. *Casey*, 113 W. Va. 335, 168 S. E. 371; *Mitros* v. *Morris*, 111 W. Va. 347, 161 S. E. 576; *Lopinsky* v. *Realty Co.*, 111 W. Va. 553, 163 S. E. 1.

No officer was appointed by the justice of the peace in the instant case. The executions were directed to the sheriff who, as to the official acts performed by him under the executions, was a public civil officer. *Thomas* v. *Grafton*, 34 W. Va. 282, 12 S. E. 478. There is a wide difference in the official status and powers of a sheriff—a constitutional officer—and a special constable appointed by a justice of the peace. The former is required to give an official bond; no bond is required of the latter. There are other distinctions between the two officers unnecessary to be noted or discussed herein. It suffices to say that the only question presented here relates to the officer to whom a justice of the peace may direct an execution on a judgment rendered by him.

A justice has no power or authority other than that expressly conferred by statute. *Roberts* v. *Hickory Camp Coal and Coke Co.*, 58 W. Va. 276, 52 S. E. 182; *Mitros* v. *Morris, supra.* The power of a justice to direct an execution to a sheriff will be found in the following:

> "When, for any cause, it is unfit for an execution * * * to be directed to a constable it may be directed to the sheriff * * *". Code, 50-14-12.

The foregoing statute expressly confers on a justice of the peace discretionary power to direct an execution to a sheriff when the unfitness of the constable exists from any cause. It is to be supposed that the statutory power conferred upon the justice was exercised in accordance therewith. "Where nothing appears to the contrary a public official is presumed to have performed his duty." *Insurance Company* v. *Carver*, 113 W. Va. 58, 166 S. E. 697.

From the record before us we cannot say that the justice of the peace failed to perform his duty or to properly exercise his discretion in directing the executions to the sheriff.

The argument is made that the justice of the peace should have made an entry on his docket relative to the unfitness of a constable. Code, 50-16-3, 4, sets forth with particularity the entries required to be made by a justice of the peace in his docket. See paragraph (k), Code, 50-16-4, with reference to executions. There is no statutory provision requiring a justice of the peace to make an entry in his docket showing the fact which renders it unfit to direct an execution to a constable.

The alternative direction of the executions to any constable of Edray District would seem to negative the existence of the statutory ground for direction to the sheriff. The direction to the officer is composed of typewritten and printed words. The words "Ward Hudson, Sheriff" and "Edray" are typewritten; the other words of the direction are printed. The specific typewritten direction to the sheriff by name leads us to the belief that the execution was directed to the sheriff and to him alone, and that the alternative direction to any constable resulted from a clerical error. We regard the alternative direction to the constable as surplusage and as having no effect on the validity of the executions or the official acts of the sheriff thereunder. What has been said renders it unnecessary to discuss or answer the second question certified.

For the reasons herein stated, we reverse the ruling of the trial court.

*Reversed.*

KENNA JUDGE, dissenting:

In my judgment the majority opinion fails properly to distinguish between the inherent and conferred powers of a justice of the peace. Nor do I agree with the statement in the opinion that a justice of the peace "has no power or authority other than expressly conferred by statute". See West Virginia Constitution, Article VIII, Section 28, grant-

ing justices of the peace civil jurisdiction in actions of assumpsit, debt, detinue, and trover to an amount not in excess of three hundred dollars. See also *County Court* v. *Holt & Clark,* 53 W. Va. 532, 44 S. E. 887. The treatment of a justice's jurisdiction as purely statutory in the *Roberts* and *Mitrose* cases, both cited in the majority opinion, is, to my mind, plain error.

Both justices of the peace and constables are constitutional officers in this State. So is a sheriff. However, the justices and constables are elected from magisterial districts and the sheriff from the county. Each serves the governmental unit from which he is chosen. The constables are the recognized officers of justices' courts (district) and the sheriffs those of courts of record (county). They are in no way interrelated or connected. Necessarily, the justice has some inherent power to control the performance of duties by his own officers. He has no such control over the sheriff. Whatever power he has to require the performance of duties by the sheriff is strictly limited to the terms of the statute conferring that power.

So it is quite clear to my mind that if the Legislature intended to grant to justices of the peace the power to address executions to the sheriff of his county with a condition attached to the exercise of that right, before that right could be exercised there must be a showing that the specified condition exists. If justices are to have the arbitrary power to order sheriffs to levy executions, the offices of the sheriffs in populous areas either will make perfunctory returns of "no property" or will definitely prefer the process of the courts of record. Seven hundred justices of the peace in West Virginia, accorded the arbitrary right to do so, may keep our fifty-five sheriffs quite busy attempting to collect the amounts of their not large executions.

The statute under consideration does prescribe a condition which must exist before a justice is empowered to address an execution to a sheriff. That condition is that

the constable shall be found, evidently by the justice, to be "unfit". The statute does not define "unfit". It may be by reason of temporary physical incapacity; it may be because of interest; or, perhaps, acrimony toward a party litigant. But we do not reach the meaning of the term "unfit" in this matter. Here there has been no effort to make such showing: no mention of it in the execution; no notation on the justice's docket; and no bias shown by affidavit or otherwise. The statute makes no provision for the manner in which unfitness may be shown, but it is my view that there should be a recital in the process itself of the fact that the justice has found the constables unfit and that at least a recital of that fact should be held to be a condition precedent to the validity of a justice's of the peace execution addressed to a sheriff. Here nothing was done. I therefore would affirm the decree of the trial chancellor.

There is a further reason for regarding the sheriff's return of no effect, and that is that the justice's execution was addressed in the alternative to the sheriff or to any constable in his district, showing beyond question that the constables were *not* "unfit". Conceding that the rule that applies to unnecessary averments being disregarded as surplusage, which, as I understand, is restricted to pleadings, can be applied to process, I still doubt if matter of fact appearing upon the face of a paper that conflicts with other material parts of the same paper, can properly be disregarded as surplusage. Simply because the part of the execution addressed to any constable was printed, does not justify treating it as surplusage because it does not legally conform to the address to the sheriff. No mistake has been alleged nor shown. This Court, in treating the sheriff's return as good, is indulging in the assumption that the constables in the district of the justice are unfit, at the same time the justice is contradicting that assumption by addressing his process to his constable.

Judge Rose authorizes me to state that he agrees with this opinion.