539 S.E.2d 442

**STATE of West Virginia ex rel. Jimmie RAY, Petitioner,**

v.

**Honorable Herman G. CANADY, Jr., Judge of the Circuit Court of Kanawha County, and Tammi J. Ray, Respondents.**

No. 27465.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 2000.

Decided July 12, 2000.

---

Parrish McKittrick, Esq., St. Albans, West Virginia, Anne E. Shaffer, Esq., Charleston, West Virginia, Attorneys for Petitioner Jimmie Ray.

James M. Cagle, Esq., Charleston, West Virginia, Attorney for Respondent Tammi J. Ray.

PER CURIAM:

In this petition for a writ of prohibition, we are asked to consider whether, in a divorce action, a circuit court may award a wife *temporary* alimony while the court has under consideration a recommended order from a family law master, and when both parties to the divorce have contemporaneously asked the circuit court to review—and possibly set aside, *inter alia*—the family law master's recommended order granting the wife *rehabilitative* alimony. We hold that a circuit court has the discretion to award temporary alimony under these circumstances, and deny the requested writ.

I.

The parties to the underlying divorce action are petitioner and defendant below, Jimmie Ray, and respondent and plaintiff below, Tammi J. Ray. The parties were married in December 1982 and separated in September 1996. Two children were born of the marriage. The respondent later filed a complaint for divorce in the Circuit Court of Kanawha County.

The limited record presented for our consideration suggests that numerous contentious hearings were held before a family law master. In a recommended order dated August 5, 1999, and forwarded to the circuit court for entry, the family law master recommended that the parties be divorced on the basis of irreconcilable differences. The law master made other recommendations, including one that the respondent receive rehabilitative alimony of $250,000.00.[1]

The petitioner filed a petition to review the August 5, 1999 recommended order with the circuit court, contending that the family law master made numerous errors. Pertinent to the instant case, the petitioner disputed the family law master's recommended award of rehabilitative alimony to the respondent, contending that the respondent did not meet the statutory criteria for alimony.[2] The petitioner also argued that the family law master failed to address the petitioner's allegations of adultery and fault on the part of the respondent, and failed to correctly calculate the amount of the parties' income available for the payment of alimony.

---

1. The recommended order also contains findings of fact reflecting that the respondent had received various cash distributions including $41,000.00 from a non-marital account owned solely by the petitioner, and that an equitable distribution of marital assets would result in the respondent receiving $568,161.68 in assets, while the petitioner would receive $650,161.71.

2. *See W.Va.Code,* 48–2–16 [1999] for a list of the criteria for a court to consider in making an award of alimony.

The respondent also filed a separate petition seeking review by the circuit court of the same recommended order.

While the parties' cross-petitions for review were pending before the circuit court, on September 3, 1999, the respondent wife filed a motion to enforce certain portions of the August 5, 1999 recommended order of the family law master—an order which had not yet been approved and entered by the circuit court. The respondent alleged that the petitioner had "engaged in self-help to enforce only the provisions of the [recommended] Order which benefit him" and had refused to comply with those portions of the order that would benefit the respondent. The respondent also alleged that the petitioner had frozen and deprived the respondent of access to all joint marital bank accounts. She alleged that the petitioner had done so on the ground that the parties had filed objections to the family law master's recommendations regarding the distribution of those accounts, and that he had indicated he would not allow the respondent to access those accounts until a ruling was received on those objections.

In an order dated January 3, 2000, the circuit court responded to the respondent's motion to enforce certain portions of the recommended order, and entered an order requiring the petitioner to pay to the respondent $62,500.00 in a lump sum as temporary alimony. The order states that the amount was to be considered a credit against any final award of alimony.

The petitioner then filed the instant petition for a writ of prohibition to halt the enforcement of the circuit court's January 3, 2000 order, granting the respondent lump sum temporary alimony.

## II.

We begin by examining the statutory authority relied upon by the circuit court for issuing its January 3, 2000 order. *W.Va.*

*Code,* 48–2–13(a)(1) [1993] states, with emphasis added:

(a) At the time of the filing of the complaint or *at any time after the commencement of an action for divorce,* annulment or separate maintenance under the provisions of this article and upon motion for temporary relief, notice of hearing and hearing, the court may order all or any portion of the following temporary relief, which order shall govern the marital rights and obligations of the parties during the pendency of the action:

(1) The court may require either party to pay *temporary alimony* in the form of periodic installments, or a lump sum, or both, for the maintenance of the other party. . . .

In its order, during the pendency of the parties' action for divorce, the circuit court required the petitioner to pay *temporary alimony* in a lump sum for the maintenance of the respondent. Accordingly, it appears that the circuit court's actions were supported by statutory authority.[3]

The petitioner, nevertheless, alleges that the circuit court exceeded its legitimate powers in awarding the respondent $62,500.00 in temporary alimony. The petitioner argues that the circuit court should not have issued its January 3, 2000 order awarding *temporary* alimony without first ruling upon the cross-petitions for review on the issue of *rehabilitative* alimony.

A writ of prohibition may be issued only to restrain an inferior court from proceeding in an action over which it has no jurisdiction, or in which, having jurisdiction, it has exceeded its legitimate powers. Syllabus Point 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953). When this Court evaluates cases such as this, where the parties allege the circuit court has exceeded its legitimate powers, we weigh five factors set forth in Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996):

3. While not cited to by the parties, another provision supporting the circuit court's actions is *W.Va.Code,* 48A–4–16(b) [1993], which allows a circuit court to "enter a temporary support and custody order or otherwise provide for relief

during the pendency of the review proceedings upon any party's request therefor or on the master's or court's own motion if the ... court deems such order or other relief to be fair and equitable."

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

The petitioner contends that the circuit court exceeded its legitimate authority in two ways. First, the petitioner points out that the family law master recommended in the August 5, 1999 order that the respondent repay the petitioner $41,000.00 for distributions made to the respondent from a non-marital account owned solely by the petitioner. The petitioner asserts that if the respondent is paid the $62,500.00 in temporary alimony, and she is later not awarded rehabilitative alimony as a result of the cross-petitions for review of the family law master's recommended order, then she will owe the petitioner $103,500.00 and will not have the funds available to repay the petitioner. Second, the petitioner argues that the circuit court's January 3, 2000 order is deficient in that it does not contain any factual findings, and he further argues that the circuit court failed to fully consider the financial needs and income of the petitioner as required by W.Va.Code, 48–2–13(b).[4]

We stated in Syllabus Point 4 of State ex rel. Hoover v. Berger that the question of "whether the lower tribunal's order is clearly erroneous as a matter of law" is one which will be given substantial weight in determining whether to grant a writ of prohibition. In our review of the record, it is clear that the circuit court had the statutory authority under W.Va.Code, 48–2–13(a)(1) to require the petitioner to pay temporary alimony to the respondent. We therefore cannot say that the circuit court's order was erroneous as a matter of law.

After examining the record presented by the parties, we also cannot say that the petitioner will "be damaged or prejudiced in a way that is not correctable on appeal," another factor to be addressed under State ex rel. Hoover v. Berger. While the petitioner has been ordered to pay the respondent $62,500.00 in temporary alimony, that amount is to be credited against any future payment of alimony to the respondent, if it is awarded. Furthermore, the family law master's recommended distribution of marital property, contained in the August 5, 1999 recommended order, indicates that the respondent is entitled to receive $568,161.68 as her share of the marital assets.[5] Should the petitioner be successful in his petition for review, and the circuit court sets aside the award of rehabilitative alimony to the re-

---

**4.** W.Va.Code, 48–2–13(b) [1993] provides, in pertinent part:

In ordering temporary relief under the provisions of this section, the court shall consider the financial needs of the parties, the present income of each party from any source, their income-earning abilities and the respective legal obligations of each party to support himself or herself and to support any other persons. Except in extraordinary cases supported by specific findings set forth in the order granting relief, payments of temporary alimony and temporary child support are to be made from a party's income and not from the corpus of a party's separate estate, and an award of such relief shall not be disproportionate to a party's ability to pay as disclosed by the evidence before the court. . . .

**5.** Aside from $79,900.00 in household goods and furnishings, the respondent is to receive the balance of her share of marital assets from the "Smith Barney Joint Account" ($411,307.66), the "City National Bank" account ($20,708.63), the "Conrail Federal Credit Union" account ($25,-722.84), and other similar sources.

spondent, we see nothing which would prevent these assets from being used to reimburse the petitioner.

Another issue which we consider, in an analysis under Syllabus Point 4 of *State ex rel. Hoover v. Berger*, is whether the circuit court's order is an "oft repeated error," and whether the order raises "new and important problems or issues of law of first impression." The Legislature has, through the enactment of *W.Va.Code*, 48-2-13(a)(1), reserved to circuit courts the authority to award temporary alimony during the pendency of a divorce action—we therefore cannot consider the circuit court's action to be an "oft repeated error" or a "problem or issue of law." Furthermore, we perceive that the Legislature intended to preserve a substantial degree of discretion in the circuit court, and to allow the circuit court to be the primary forum for considering the question of temporary alimony during the pendency of divorce proceedings.

While we are concerned that the circuit court's order does not contain specific findings of fact, we do not believe that this technical error mandates a writ of prohibition. Not only is such an error correctable upon appeal, but upon our examination of the record in this case it appears that the circuit court did consider the financial needs and income of the petitioner as required by *W.Va.Code*, 48-2-13(b). We therefore do not find that the circuit court abused its discretion—particularly to a level that exceeds the legitimate powers of a circuit court.

### III.

Based upon our consideration of the factors set forth in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, we cannot say that the circuit court exceeded its legitimate powers in issuing its January 3, 2000 order. Accord-

ingly, the requested writ of prohibition is denied.[6]

Writ Denied.

Justice McGRAW dissents.

---

6. *W.Va.Code*, 48A-4-20(e) [1999] requires a circuit court to rule on objections to a family law master's recommendations within 10 days of the expiration of the period for filing a petition for review. Rule 28 of the *Rules of Practice and Procedure for Family Law* [1993] makes it clear that a circuit judge must rule on any petitions for review within 30 days of the date on which the petition was submitted for decision.

In the instant case, the parties have indicated that the circuit court has delayed ruling on the petitions for review due to the filing of the instant petition for a writ of prohibition. As set forth above, we deny the requested writ, and direct that the circuit court endeavor to rule on the parties' petitions for review forthwith.